IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| GUARDSQUARE INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO: |
| | ) |
| | ) |
| FIDELITY INFORMATION | ) |
| SERVICES, LLC, | ) |
| | ) |
| | ) |
| Defendant. | ) |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff GUARDSQUARE INC. ("Guardsquare" or "Plaintiff"), by and through its undersigned counsel, hereby sues Defendant FIDELITY INFORMATION SERVICES, LLC ("FIS" or "Defendant"), and alleges as follows.

**NATURE OF THE DISPUTE**

1. This is an action for breach of contract and, alternatively, account stated, unjust enrichment, and quantum meruit, seeking damages in connection with FIS's failure to meet its obligations under a software licensing service agreement with Guardsquare.

**JURISDICTION AND VENUE**

2. This Court has subject matter jurisdiction over this cause of action pursuant to 28 U.S.C. §1332 as Guardsquare and FIS are citizens of different states and the amount in controversy exceeds $75,000.

3. Guardsquare is a corporation organized under the laws of Delaware with its principal place of business in Massachusetts.

4. FIS is a limited liability company organized under the laws of Arkansas with its principal place of business in Jacksonville, Florida.

5. FIS's sole member, Fidelity National Information Services, LLC, is a limited liability company organized under the laws Delaware with its principal place of business in Delaware.

6. Fidelity National Information Services, LLC's sole member is Advanced Financial Solutions, Inc., which is incorporated in Oklahoma with its principal place of business in Oklahoma.

7. Accordingly, for purposes of diversity jurisdiction, FIS is a citizen of Oklahoma. Therefore, there is complete diversity of citizenship between FIS and Guardsquare.

8. FIS is subject to personal jurisdiction before this Court.  The Court may exercise general personal jurisdiction over FIS because FIS is "engaged in substantial and not isolated activity within this state." § 48.193(2), Fla. Stat. At all relevant times, FIS has been a resident of Jacksonville, Florida, where it maintains its principal place of business. FIS has a continuous and systematic course of doing business by operating, conducting, engaging in, or carrying on a business or business venture in Florida.

9. The Court may exercise specific personal jurisdiction over FIS because Plaintiff's claims arise out of, and relate to, FIS' activities within Florida.  The Court

has specific jurisdiction over FIS because Plaintiff's claims against FIS arise from FIS "[o]perating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state" and "[b]reaching a contract in this state by failing to perform acts required by the contract to be performed in this state." §§ 48.193(1)(a)(1), (7), Fla. Stat.

10. As described below, a substantial part of the events giving rise to Plaintiff's claims have occurred in this district, such that FIS breached a contract in Florida by failing to perform acts required by the contract to be performed in Florida.

11. This is an action for monetary damages in excess of $75,000.00, exclusive of interest, cost, and attorneys' fees, within the subject matter jurisdiction of this Court.

12. This action is brought within the judicial district where the breach occurred, making venue proper under 28 U.S.C. § 1391.

13. This action is properly before the Jacksonville Division of the United States District Court for the Middle District of Florida, pursuant to Local Rule of the United States District Court for the Middle District of Florida 1.04(b).

## FACTUAL ALLEGATIONS

14. Guardsquare develops and deploys comprehensive mobile app security software to protect iOS and Android applications from attacks by threat actors as well as detect potential vulnerabilities within the app during development and in real-time after release.

15. FIS and Guardsquare have maintained a business relationship since 2018, at which time FIS purchased from Guardsquare the right to use certain software,

3

77892893;6

in particular DexGuard, in order to protect 1,554 FIS applications on the Android platform (the "**Software**").

16. As part of the parties' agreement as to the purchase of the Software, the parties agreed to the terms of the License, Services and Maintenance Agreement (the "**Agreement**"), as amended on April 13, 2022, attached hereto as **Composite Exhibit "A"**.[1]

17. Under the Agreement, Guardsquare issued "Orders" for "the purchas[e] of Software licenses by [FIS] and the delivery of Support Services and/or Professional Services by Guardsquare to [FIS]. *See* Exhibit A. at 1.1.

18. The Effective Date of the Agreement was the date on which the last signature was affixed to an Order. *Id.*

19. Accordingly, the Agreement's Effective Date was on or about June 14, 2018, when FIS and Guardsquare signed the "Quotation for the protection of 1,554 apps on Android," which was deemed accepted upon execution and which constituted the "Order" under the terms of the Agreement. A true and correct copy of the **Order** is attached hereto as **Exhibit "B".**

---

[1] The Agreement governed all future transactions between the parties, by which FIS agreed to purchase software from Guardsquare for the amounts reflected in orders and invoices between the parties. In turn, Guardsquare agreed to provide FIS with the right to use software and agreed to secure and maintain FIS's access to use the software. On April 13, 2022, the parties ratified the Agreement by expressly stating in an amendment, "Except as expressly provided for herein, all other terms and conditions of the Agreement shall remain unchanged and in full force and effect."

20. The Order stated: "This document, once accepted by [FIS], constitutes an Order as per the terms of the MSA between GuardSquare and FIS ("the Agreement"), and shall be exclusively governed by the Agreement." *See* Exhibit B.

21. The Order further stated: "License Fees and Support Fees will be invoiced on the date of the Client's acceptance of this offer and annually upfront thereafter." *Id.*

22. Thereafter, Guardsquare issued its first invoice for the Software on or about June 25, 2018 (the **"First Invoice"**). The First Invoice covered the term from June 25, 2018, through January 1, 2019. A true and correct copy of the First Invoice is attached hereto as **Exhibit "C".**

23. The Agreement states as follows regarding its term and termination:

> This Agreement shall commence on the Effective Date and shall continue for the term of the Order to which it relates. As a default (unless deviated from in the relevant Order), Orders (including any Software licenses and Support Services contracted pursuant to such an Order) are entered into for an initial one (1) year term (the "Initial Term"). Upon expiry of this Initial Term, the Orders shall automatically renew for successive one (1) year periods (each a "Renewal Term"), unless terminated by either Party on giving at least three (3) months' written notice prior to the expiry of the Initial Term or then current Renewal Term.

Exhibit A at Section 11.1.

24. Thus, each year, pursuant to Section 11.1 of the Agreement, the Order automatically renewed for successive one (1) year periods (each a "**Renewal Term**") unless terminated by either party upon giving at least three (3) months written notice prior to the expiration of the Renewal Term.

77892893;6

25. Prior to the commencement of each Renewal Term, Guardsquare sent FIS an invoice pursuant to the corresponding Order. The Renewal Terms, which corresponded to the calendar year, were reflected on each invoice.

26. This process of renewal of the Order continued through December 31, 2023 ("Final Renewal").

27. FIS did not provide notice of termination three (3) months prior to the expiration of the Renewal Term in December 2023, and, therefore, the Order automatically renewed for an additional one-year term and remained in effect through and including December 31, 2024.

28. However, upon receipt of the Invoice for the Final Renewal on or about November 20, 2023 (the **"Final Invoice"**), FIS refused to remit payment for same. A true and correct copy of the Final Invoice is attached hereto as **Exhibit "D".**

29. FIS received the Software pursuant to the Final Invoice and continued to receive the benefit from same through, at least, March 2024.

30. FIS refused or otherwise failed to pay Guardsquare for the Software provided pursuant to the Final Invoice.

31. The principal (not including applicable interest, late fees, or expenses) owed to Guardsquare pursuant to the Final Invoice is **$433,626.69**.

32. Guardsquare served FIS with multiple notices of default and demands for payment, but FIS failed to remit payment as requested.

33. Accordingly, Guardsquare has been forced to retain undersigned counsel and has agreed to pay it its reasonable costs and attorneys' fees associated with the prosecution of this action.

34. Guardsquare is entitled to recover all expenses, including costs and attorneys' fees, incurred as a result of the judicial enforcement of FIS's payment obligations. *See* Exhibit A at Section 7.2.

35. All conditions precedent to this action have been met, satisfied, or have been otherwise waived.

## Count I: Breach of Contract

36. Plaintiff reasserts its allegations set forth in paragraphs 1 through 35 as if fully set forth herein.

37. This is an action for *breach of contract*.

38. Plaintiff and Defendant entered into a contractual arrangement concerning Plaintiff's sale of the Software to Defendant. *See* Exhibits A – D.

39. Plaintiff provided the Software to Defendant for the Final Renewal, pursuant to the parties' contractual arrangement.

40. Defendant failed to pay Plaintiff pursuant to the Final Invoice and, thereby, breached its obligations to Plaintiff.

41. Plaintiff has been damaged as a result of Defendant's failure to pay the amounts set forth under the Final Invoice.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter a judgment against Defendant for damages including, but not limited to, the amounts Defendant

was obligated to pay Plaintiff pursuant to the Final Invoice and Agreement, along with any applicable interest, expenses, attorneys' fees, late fees, and all other charges due or recoverable by Plaintiff against Defendant, together with such other and further relief this Court may deem just, equitable, and proper under the circumstances.

## Count II: Account Stated

42. Plaintiff reasserts its allegations set forth in paragraphs 1 through 35 as if fully set forth herein.

43. This is an action for *account stated*, which is asserted as an alternative claim for relief.

44. Before the institution of this action, the parties entered into a contractual arrangement concerning Plaintiff's sale of Software to Defendant, during the timeframe reflected in the Agreement, Order, First Invoice, and Final Invoice. *See* Exhibits A – D.

45. Defendant agreed to the resulting balance owed by it to Plaintiff.

46. Plaintiff rendered a statement of the balance owed to it upon Defendant for the Final Renewal via the Order, pursuant to the Agreement.

47. Defendant did not timely object and properly terminate the contractual arrangement and, therefore, Defendant is bound by the contractual arrangement.

48. Defendant owes Plaintiff at least $433,626.69 that is due with, among other things, interest on the account.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter a judgment against Defendant for damages including, but not limited to, the amounts Defendant

was obligated to pay Plaintiff pursuant to the Invoice and Agreement, along with any applicable interest, expenses, attorneys' fees, late fees, and all other charges due or recoverable by Plaintiff against Defendant, together with such other and further relief this Court may deem just, equitable, and proper under the circumstances.

### Count III: Unjust Enrichment

49. Plaintiff reasserts its allegations set forth in paragraphs 1 through 14, 21, and 24 through 35 as if fully set forth herein.

50. This is an action for *unjust enrichment* against Defendant, which is asserted as an alternative claim for relief and insofar as no express contract exists between the parties.

51. A benefit has been conferred upon Defendant, namely Defendant's possession, retention and/or use of the Software, after having received the Software from Plaintiff.

52. Defendant had knowledge of this conferred benefit.

53. Defendant voluntarily accepted and retained this conferred benefit.

54. Because Defendant has retained the Software to which it has failed to provide the value of the benefit to Plaintiff, it would be inequitable for Defendant to retain the Software.

55. As stated herein, Defendant has been unjustly enriched at the expense of Plaintiff.

77892893;6

56. As a direct and proximate result of Defendant's failure to pay for the Software delivered by Plaintiff, Plaintiff has been damaged in an amount in excess of $75,000 plus interest from the date of the breach.

57. Plaintiff is entitled to damages as a result of Defendant's unjust enrichment.

58. Plaintiff has no adequate remedy at law.

**WHEREFORE**, Plaintiff requests that this Court enter a judgment in its favor and against Defendant, awarding Plaintiff any and all damages allowable under law, plus cost and interest, together with such other and further relief as the Court deems just, equitable, and proper under the circumstances.

### Count IV: Quantum Meruit

59. Plaintiff re-alleges the allegations in paragraphs 1 through 14, 21, and 24 through 35 of this Complaint as if fully set forth herein.

60. This is a count for *quantum meruit* against Defendant, which is asserted as an alternative claim for relief and insofar as no express contract exists between the parties.

61. Plaintiff conferred a valuable benefit upon Defendant by virtue of the Software Plaintiff delivered to Defendant.

62. Defendant was aware that Plaintiff provided it with the Software, all of which inured to the benefit of Defendant.

63. Defendant accepted all of Plaintiff's Software provided.

64. Defendant assented to and received the valuable benefit of the Software provided by Plaintiff.

65. Defendant directly benefited from the Software rendered by Plaintiff.

66. In providing such Software to Defendant, Plaintiff expected to receive reasonable compensation for same.

67. Defendant knew that Plaintiff expected to be compensated and paid for the value of the Software provided.

68. Under the facts and circumstances specified herein, Defendant has the obligation to pay Plaintiff for the value of the Software that Plaintiff provided to Defendant.

69. Unless Plaintiff is paid the value of its Software provided to Defendant, Defendant will be unjustly enriched in an amount equal to the fair market value of the Software provided by Plaintiff.

70. As a direct and proximate result of Defendant's failure to pay for the Software delivered by Plaintiff, Plaintiff has been damaged in an amount in excess of $75,000 plus interest from the date of the breach.

71. Plaintiff has no adequate remedy at law.

**WHEREFORE**, Plaintiff requests that this Court enter a judgment in its favor and against Defendant awarding Plaintiff any and all damages allowable under law, plus cost, interest, and attorneys' fees, together with such other additional relief as this Court deems just, equitable, and proper under the circumstances.

## **TRIAL BY JURY**

Plaintiff requests trial by jury for all counts herein alleged so triable.

Dated:  September 17, 2024         Respectfully submitted,

/s/ *Monica M. Kovecses*
**Megan Costa DeLeon (Lead Counsel)**
Florida Bar No. 0560731
**Monica M. Kovecses**
Florida Bar No. 105382
**Alexander W. Adeseye**
Florida Bar No. 1044456
Primary Email:  megan.deleon@akerman.com
Primary E-mail: monica.kovecses@akerman.com
Primary Email: alexander.adeseye@akerman.com
Secondary Email:  suzy.miller@akerman.com
Secondary E-mail: danielle.campbell@akerman.com
Secondary Email: wanda.thomas@akerman.com
Secondary E-mail: marisol.mojica@akerman.com
**AKERMAN LLP**
420 South Orange Avenue, Suite 1200
Orlando, FL 32801-4904
Phone:  (407) 423-4000
Fax:  (407) 843-6610

*Attorneys for Plaintiff Guardsquare Inc.*

77892893;6