UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

GUARDSQUARE INC.,

     Plaintiff,

v.                               Case No. 3:24-cv-00962-TJC-MCR

FIDELITY INFORMATION
SERVICES, LLC,

     Defendant.

_____/

**DEFENDANT FIDELITY INFORMATION SERVICES, LLC'S
MOTION TO DISMISS PLAINTIFF GUARDSQUARE INC.'S
COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

Pursuant to Rule 12(b)(6) of the Federal Rule of Civil Procedure, Defendant

Fidelity Information Services, LLC ("FIS") hereby moves the Court for entry of an

order dismissing the Complaint and Demand for Jury Trial (Doc. 1) ("Complaint")

filed by Plaintiff Guardsquare Inc. ("Guardsquare") because the Complaint fails to

state a claim upon which relief can be granted.  In support of this Motion, FIS states:

**I.**     **INTRODUCTION**[1]

Guardsquare's Complaint should be dismissed because Guardsquare attached

"Agreement Version 3.3 May 2017" to the Complaint, which, according to the other

unambiguous executed exhibits attached to the Complaint, is not the operative

contract.  Although the executed Amendment states that the terms of "Agreement

---

[1] Capitalized terms not defined in this Introduction shall bear the meanings ascribed below.

Version 3.5 March 2018" govern the contractual relationship, Guardsquare's allegations extensively quote, and Guardsquare's claims depend solely upon, the terms of Version 3.3.  FIS's purported failure to comply with the terms of Version 3.3 is the sole alleged basis for Guardsquare's claims for payment of the purported 2023 Invoice.  However, the allegations regarding Version 3.3 are contradicted by the terms of the executed Amendment and the Order attached to the Complaint, which clearly and unambiguously state that Version 3.5 applies.  Accordingly, the Complaint should be dismissed because Guardsquare fails to state a plausible claim for relief for any of the purported claims in the Complaint.

## II.     BACKGROUND[2]

In the Complaint, Guardsquare asserts four purported causes of action based upon FIS's alleged failure to pay an invoice dated November 20, 2023 (Doc. 1-4) ("2023 Invoice").  According to Guardsquare, the 2023 Invoice arises out of the business relationship that began upon FIS's execution of an order dated June 14, 2018 (Doc. 1-2) ("Order").  Guardsquare claims that the Order was governed by "Version 3.3 May 2017" of the "License, Services and Maintenance Agreement" (Doc. 1-1 at pp. 1–15) ("Version 3.3").  However, Guardsquare attached a signed Amendment to the License, Services and Maintenance Agreement dated April 13, 2022 (Doc. 1-1 at pp.16–17) ("Amendment"), which clearly and unambiguously states that the Order

---

[2] For purposes of this Motion only, FIS provides this factual background as alleged in the Complaint, consistent with the governing standard which takes all well-pled facts as true, but FIS denies the allegations in the Complaint and denies that Guardsquare has stated any viable claim for relief.

"was subject to the License, Services and Maintenance Agreement version 3.5 March 2018" ("Version 3.5"), not Version 3.3.

## A.    The Documents Attached to the Complaint

Guardsquare attached Version 3.3, the Amendment, the Order, an invoice dated June 25, 2018 (Doc. 1-3) ("Invoice"), and the 2023 Invoice to the Complaint.

### 1.    The Order Dated June 14, 2018

Guardsquare alleges that its business relationship with FIS began when "FIS purchased from Guardsquare the right to use certain software, in particular DexGuard, in order to protect 1,554 FIS applications on the Android platform." Doc. 1 at ¶ 15.  According to Guardsquare, this business relationship formally began "on or about June 14, 2018, when FIS and Guardsquare signed the 'Quotation for the protection of 1,554 apps on Android,' . . . which constituted the 'Order' under the terms of the Agreement."  *Id.* at ¶ 19.

The terms of the Order contemplate a relationship of only one year, stating that Guardsquare offered "the protection of 1,554 apps on the Android platform **for 1 year**."  Doc. 1-2 (emphasis added).  The Order provides for a "2019 engagement" for 1,544 applications at a price of $463,200 and states that "[t]his document, once accepted by [FIS], constitutes an Order as per the terms of the MSA between Guardsquare and FIS . . ., and shall be exclusively governed by the Agreement."  *Id.*

### 2.    The Invoice Dated June 25, 2018

Guardsquare alleges that it "issued its first invoice for the Software on or about June 25, 2018."  Doc. 1 at ¶ 22.  The Invoice mirrors the terms of the Order (i.e., $463,200 for 1,544 apps), with a "due date" on January 31, 2019.  *See* Doc. 1-3.

### 3.    The Amendment Dated April 13, 2022

Guardsquare alleges that the parties "agreed to the terms of the License, Services and Maintenance Agreement, as amended on April 13, 2022" and that "[o]n April 13, 2022, the parties ratified the Agreement by . . . stating in an amendment 'Except as expressly provided for herein, all other terms and conditions of the Agreement shall remain unchanged and in full force and effect.'"  Doc. 1 at ¶¶ 16, 16 n.1.  However, the Amendment also states "FIS and Guardsquare executed **a quotation on 14 June 2018 which was subject to** the License, Services and Maintenance Agreement **version 3.5 March 2018**."  *Id.* at p.16 (emphasis added).

### 4.    Agreement Version 3.3 May 2017

Although the Amendment states that Guardsquare and FIS agreed to the terms Version 3.5, Guardsquare relied upon and attached Version 3.3 to the Complaint.  *See* Doc. 1-1 at pp.1–15.  Guardsquare references and depends on Version 3.3 throughout its Complaint and in each of its purported claims.  *See* Doc. 1 at ¶¶ 16–48, 49, 59.

## B.    Guardsquare's Claims Depend on the Terms of the Wrong Agreement

Guardsquare's claims are premised on the effect of the automatic renewal provision contained in Section 11.1 of Version 3.3.  Guardsquare alleges that the Order "automatically renewed for successive one (1) year periods (each a 'Renewal Term')

unless terminated by either party upon giving at least three (3) months written notice prior to the expiration of the Renewal Term." Doc. 1 at ¶¶ 23, 24. Guardsquare alleges that "[t]his process of renewal of the Order continued through December 31, 2023" and that because "FIS did not provide notice of termination three (3) months prior to the expiration of the Renewal Term in December 2023 . . . the Order automatically renewed for an additional one-year term and remained in effect through and including December 31, 2024." *Id.* at ¶ 27.

Based solely on FIS's purported failure to provide notice of its intent not to renew the Order, Guardsquare claims that FIS became obligated to pay the 2023 Invoice in the amount of $433,626.69, and breached Version 3.3 and/or the Order by failing to do so. *See id.* at ¶¶ 28, 30, 38 (citing Ex. A–D), 44 (same); Doc. 1-4. In each of the Counts of the Complaint, Guardsquare realleges the allegations predicated on Version 3.3 and FIS's purported failure to provide sufficient notice of its intent not to renew the Order. *See* Doc. 1 at ¶¶ 36, 42, 49, 59.

As a result of FIS's alleged failure to pay Guardsquare, Guardsquare asserts claims for (i) breach of contract, (ii) account stated, (iii) unjust enrichment, and (iv) quantum meruit, all of which depend on the non-operative Version 3.3. *See* Doc. 1 at ¶¶ 36–71. As explained herein, these claims must be dismissed for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## MEMORANDUM OF LAW

### III.   LEGAL STANDARD

A complaint must be dismissed if it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)); *see* Fed. R. Civ. P. 8(a)(2).   For a pleading to show that a claim to relief is plausible, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient.   *Iqbal*, 556 U.S. at 679.   "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.*

In deciding whether a complaint states a claim for relief, courts may "consider all documents that are attached to the complaint or incorporated into it by reference." *Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019).   "[A]n attachment to a complaint generally becomes 'part of the pleading for all purposes,' . . . including for ruling on a motion to dismiss." *Judd*, 941 F.3d at 511 (quoting Fed. R. Civ. P. 10(c)) (citing *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016); *Saunders v. Duke*, 766 F.3d 1262, 1270 (11th Cir. 2014); *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1199 (11th Cir. 2007)).   Thus, the Amendment and other attachments to the Complaint are properly considered by the Court in determining whether Guardsquare stated a plausible claim for relief under Rule 12(b)(6).

## IV.    ARGUMENT

Guardsquare's Complaint is premised solely on Version 3.3 and FIS's purported acceptance (through its alleged failure to not reject) of the automatic annual renewal of the one-year Order, as provided by Section 11.1 of Version 3.3.    Each Count realleges the general allegations that depend on the premise that Version 3.3 governs and that FIS renewed the Order due to the automatic renewal provision in Version 3.3.    Critically, however, Guardsquare attached the Amendment to the Complaint, which expressly contradicts the allegations that seek to hold FIS to Version 3.3 by making clear that Version 3.5 governs the Order and memorializes the parties' agreement to be governed by the terms of Version 3.5.

It is well-established that where allegations of the pleading are contradicted by an attachment, the express language of the attachment controls.    Because the allegations and purported causes of action in the Complaint depend upon the terms of the incorrect Version 3.3, they are contradicted by the Amendment, and cannot form the basis of a plausible claim for relief.    Accordingly, the Complaint must be dismissed for failure to state a claim under Rule 12(b)(6).

### A.    Version 3.5 Governs the Relationship Between FIS and Guardsquare

According to the plain language of the executed Amendment, Version 3.5 governs the relationship between FIS and Guardsquare.    The Amendment states that the Order was made subject to Version 3.5, not Version 3.3.    *See* Doc. 1-1 at p.16.    The Amendment further states that "[e]xcept as expressly provided for herein, all other terms and conditions of the [Version 3.5] shall remain unchanged and in full force and

effect." *See id.* at p.17.   These unambiguous[3] statements indicate that FIS and Guardsquare intended to be bound by the terms of Version 3.5, not Version 3.3. Moreover, the Order states that "[t]his document, once accepted by [FIS], constitutes an Order as per the terms of the MSA between Guardsquare and FIS (the 'Agreement'), and shall be exclusively governed by the Agreement." Doc. 1-2.  Thus, the Amendment, which states that the Order was made subject to Version 3.5, confirms that the Order is exclusively governed by Version 3.5—not Version 3.3.

**B.    The Allegations that Are Contradicted by the Exhibits Attached to the Complaint Are Not Entitled to A Presumption of Truth**

Despite the plain language of the Amendment that clearly states Version 3.5 is the operative agreement, Guardsquare attached Version 3.3 to the Complaint.  *See* Doc. 1-1.   Guardsquare depends exclusively on the provisions in Version 3.3 to establish that FIS and Guardsquare maintained a contractual relationship after the one-year term contemplated by the Order and Invoice elapsed, and is therefore obligated to pay the 2023 Invoice.  *See* Doc. 1 at ¶¶ 23–31.   However, Guardsquare's allegations are contradicted by the express terms of the Amendment, which clearly states that Version 3.5 controls.  *See generally* Doc. 1.

The allegations arising from the non-operative Version 3.3 are not entitled to any presumption of truth because they are contradicted by the unambiguous language

---

[3] Regardless of the state law applied to the terms of the Amendment, the clear and unambiguous language of the Amendment controls.  *See GSE Consulting, Inc. v. L3Harris Techs., Inc.*, 59 F.4th 1196, 1202 (11th Cir. 2023) (applying Florida law); *Coal Corp. v. Drummond Coal Sales, Inc.*, 28 F.4th 1334, 1341 (11th Cir. 2022) (applying New York law); *Siebe, Inc. v. Louis M. Gerson Co.*, 74 Mass. App. Ct. 544, 550, 908 N.E.2d 819, 826 (2009) (applying Massachusetts law).

of the Amendment. "[W]hen exhibits attached to a complaint 'contradict the general and conclusory allegations of the pleading, the exhibits govern.'" *Judd*, 941 F.3d at 514 (quoting *Irvin*, 496 F.3d at 1206); *see Turner v. Williams*, No. 3:19-CV-641-TJC-PDB, 2021 WL 1521137, at *2 (M.D. Fla. Mar. 17, 2021) (Corrigan, J.) ("where 'allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls.'") (quoting *Hoefling*, 811 F.3d at 1277)) *aff'd*, 65 F.4th 564 (11th Cir. 2023). Indeed, "[t]he classic example is when a plaintiff attaches a document to his complaint but his **allegations about what the document is or says contradict the document itself**." *Judd*, 941 F.3d at 514 (quoting *Hoefling*, 811 F.3d at 1277) (emphasis added).

The Eleventh Circuit has held that allegations contradicted by pleading attachments are not entitled to a presumption of truth, stating in relevant part that "a 'litigant may be defeated by his own evidence, the pleader by his own exhibits' when 'he has pleaded too much and has **refuted his own allegations by setting forth the evidence relied on to sustain them**.'" *Judd*, 941 F.3d at 511 (quoting *Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940)) (underlining in *Judd*; boldface added). In *Simmons*, the Fifth Circuit[4] affirmed the dismissal of the plaintiff's contract and quasi-contract claims because the attachments to the complaint revealed that the defendant was not bound to a contractual or quasi-contractual relationship, despite the

---

[4] "In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), [the Eleventh Circuit] adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981." *Judd*, 941 F.3d at 512 n.2.

plaintiff's general allegations claiming the opposite.  *See Judd*, 941 F.3d at 514 (citing *Simmons*, 113 F.2d at 812–13).  This same concept has been applied by other federal courts to dismiss complaints containing allegations that are contradicted by attachments.  *See, e.g.*, *Patel v. AR Grp. Tennessee, LLC*, No. 3:20-CV-00052, 2022 WL 2678733, at *10 (M.D. Tenn. July 11, 2022) ("Every claim incorporates by reference all of the flawed allegations discussed above, thus clearly relying on those allegations . . . But Plaintiffs' incorporated and claim-specific references to all of these concepts must be disregarded because, as discussed above, the SAC's articulation of these concepts flatly contradicts the plain terms of Plaintiffs' proffered Agreement. . ."); *Creelgroup, Inc. v. NGS Am., Inc.*, 518 F. App'x 343, 347 (6th Cir. 2013) (affirming dismissal of contract claims, stating that a plaintiff "cannot survive a motion to dismiss, even if it has pleaded the existence of a contract, if the written instrument plainly contradicts the pleadings because 'when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations.'").  The same result is mandated here.

Here, the Amendment, which states that the Order was made subject to Version 3.5, contradicts the allegations that assert the provisions of Version 3.3 control. *Compare* Doc. 1-1 at p.16–17 *with* Doc. 1 at ¶¶ 23, 24.  The Complaint relies *exclusively* on the terms of Version 3.3 to establish the terms of the relationship between Guardsquare and FIS.  *See* Doc. 1 at ¶¶ 23–28.  As in *Judd*, and as in *Simmons*, Guardsquare's Complaint "is plagued not by what it lacks, but by what it contains. All of the paths to relief which the pleading suggests are blocked by the allegations and

the attached documents themselves, without more." *Judd*, 941 F.3d at 512 (quoting *Gen. Guar. Ins. Co. v. Parkerson*, 369 F.2d 821, 825 (5th Cir. 1966)).

Thus, the allegations that Version 3.3 give rise to Guardsquare's claims are not to be taken as true for purposes of evaluating whether Guardsquare stated a claim for relief under Rule 12(b)(6). *See Turner*, 2021 WL 1521137, at *2 (Corrigan, J.); *see, e.g.*, *Isaac Indus., Inc. v. Petroquimica de Venezuela, S.A.*, No. 19-23113-CIV, 2022 WL 4483397, at *4 (S.D. Fla. Sept. 27, 2022) (denying to construe allegations as true on a motion to dismiss where "the three invoices [plaintiff] attaches to its complaint actually contradict [plaintiff]'s conclusory allegations about contracting with [defendant] . . ."); *DZB ANK AG Deutsche Zentral-Genossenschaftsbank, Frankfurt AM Main, New York Branch v. Lisa Francisque Ins. Agency, LLC*, No. 10-20731-CIV, 2010 WL 11597969, at *2 (S.D. Fla. July 28, 2010) ("a claim should be dismissed when it conflicts with the express language of the contract.").

## C. The Allegations that Are Not Contradicted by the Amendment Do Not Independently State a Plausible Claim for Relief

Without considering the conclusory and contradicted allegations of the Complaint that depend upon the wrong Version 3.3, *see Judd*, 941 F.3d at 516, there are no allegations establishing the terms of an underlying contractual relationship that give rise to an obligation to pay the 2023 Invoice. Thus, the contract-based claims fail because they depend solely on allegations establishing purported contractual obligations based on the wrong Version 3.3. The non-contract claims fail because the

Amendment and the Order establish the existence of a contractual arrangement (i.e., Version 3.5). Thus, Guardsquare fails to state a claim for relief.

> 1. **Guardsquare's Purported Breach of Contract Claim and Account Stated Claim Fail to State Claims for Relief Because They Fail to Allege the Existence of An Enforceable Agreement**

Guardsquare's purported breach of contract[5] and account stated claims depend on the "contractual arrangement concerning Plaintiff's sale of the Software to Defendant," Doc. 1 at ¶¶ 38, 43, but contain no factual allegations independent of Version 3.3 showing the creation or existence of a relationship that obligates FIS to pay the 2023 Invoice or binds FIS to Version 3.3. *See* Doc. 1 at ¶¶ 38–48.

Because Guardsquare asserts claims based on the incorrect Version 3.3 to show FIS agreed to any obligation to pay the 2023 Invoice, Guardsquare's claims for breach of contract and account stated[6] fail to state a claim on which relief can be granted. *See, e.g.*, *U.S. All. Mgmt. Corp. v. Airbus Ams. Customer Servs., Inc.*, No. 19-24066-CIV, 2020 WL 13613823, at *6–*7 (S.D. Fla. Jan. 30, 2020) (dismissing breach of contract claim as lacking the requisite factual allegations, stating "[t]he Court [should] not ignore

---

[5] Whether Florida, New York, or Massachusetts law applies, the Complaint's lack of allegations showing FIS's acceptance of an obligation or a breach thereof is fatal to Guardsquare's breach of contract claim. *See De Gazelle Grp., Inc. v. Tamaz Trading Establishment*, 113 F. Supp. 3d 1221, 1223 (M.D. Fla. 2014) (applying Florida law); *34-06 73, LLC v. Seneca Ins. Co.*, 39 N.Y.3d 44, 52, 198 N.E.3d 1282, 1287 (2022) applying New York law); *Hoang v. Eternal Salon, Inc.*, 91 Mass. App. Ct. 1109, 81 N.E.3d 822 (2017) (applying Massachusetts law).

[6] Whether Florida, New York, or Massachusetts law applies, the lack of an allegation showing an agreement to pay a certain balance is fatal to a claim for account stated. *See Merrill-Stevens Dry Dock Co. v. Corniche Exp.*, 400 So. 2d 1286, 1286 (Fla. 3d DCA 1981) (applying Florida law); *Santander Bank, N.A. v. Rubin Trading Corp.*, 68 Misc. 3d 1013, 1020, 130 N.Y.S.3d 210, 216 (N.Y. Sup. Ct. 2020) (applying New York law); *Davis v. Arnold*, 267 Mass. 103, 110, 165 N.E. 885, 888 (1929) (applying Massachusetts law).

specific factual details in the [attached] Agreement in favor of Plaintiff's general and conclusory allegations."); *see also Est. of Bass v. Regions Bank, Inc.*, 947 F.3d 1352, 1358 (11th Cir. 2020) (affirming dismissal of complaint because plaintiff failed to allege "any general or specific provision of any contract that [defendant] might have breached[,]" and "generally asserted a breach of contract, without identifying any provisions or any specific agreements that were breached . . ."); *Sky Enterprises, LLC v. Offshore Design & Drilling Servs., LLC*, No. 3:16-CV-916-J-32PDB, 2017 WL 519115, at *2 (M.D. Fla. Feb. 8, 2017) (Corrigan, J.) ("[Plaintiff]'s remaining counts contain conclusory allegations, unsupported by sufficient facts to meet basic federal pleading standards. . . . [plaintiff] alleges breach of contract . . ., but fails to specify what provisions of the contract Defendants breached . . .").

### 2.    Guardsquare's Purported Unjust Enrichment and Quantum Meruit Claims Also Fail to State a Plausible Claim for Relief

Guardsquare's purported unjust enrichment and quantum meruit claims are "asserted as . . . alternative claim[s] for relief and insofar as no express contract exists between the parties." Doc. 1 at ¶¶ 50, 60. However, the Order signed by FIS and Guardsquare, and the Amendment signed by FIS and Guardsquare, state that the express terms of Version 3.5 control. Doc. 1-2; Doc. 1-1 at p.15–16. Thus, based on the attachments to the Complaint, an express contract exists[7] between the parties, and

---

[7] Whether Florida, New York, or Massachusetts law applies, the existence of a written agreement is fatal to Guardsquare's purported alternative claims for unjust enrichment and quantum meruit. *See Doral Collision Ctr., Inc. v. Daimler Tr.*, 341 So. 3d 424, 430 (Fla. 3d DCA 2022) (applying Florida law); *Chang v. Winklevoss*, 95 Mass. App. Ct. 202, 210–11, 123 N.E.3d 204, 212 (2019) (applying Massachusetts law); *Ingham ex rel. Cobalt Asset Mgmt., L.P. v. Thompson*, 88 A.D.3d 607, 609, 931 N.Y.S.2d 306, 308 (2011) (applying New York law).

"Florida law does not permit a claim for quantum meruit where a valid written contract exists." *Servant Health, LLC v. McWilliams*, No. 3:22-CV-210-TJC-LLL, 2022 WL 16743962, at *3 (M.D. Fla. Nov. 7, 2022) (Corrigan, J.); *see Webster v. Royal Caribbean Cruises, Ltd.*, 124 F. Supp. 2d 1317, 1326 (S.D. Fla. 2000) ("the defendant . . . has admitted to the existence of an express contract between the parties and has submitted to the court a copy of the [contract]. . . 'upon a showing that an express contract exists, the quasi-contract claim fails.'") (citation omitted); *id.* ("Florida appellate decisions have reinforced the position that quantum meruit damages cannot be awarded when an enforceable contract exists.").

## V.    CONCLUSION

WHEREFORE, FIS respectfully requests that the Court grant this Motion and enter an order dismissing Guardsquare's Complaint and granting such other and further relief that the Court deems just and proper.

### Local Rule 3.01(g) Certification

Pursuant to Local Rule 3.01(g), the undersigned counsel for FIS certifies that he has conferred in good faith with counsel for Guardsquare via exchange of electronic mail between December 9 and 13, 2024, and that Guardsquare opposes the relief requested in this Motion and has refused FIS's request that Guardsquare amend the Complaint to reflect and attach the operative and controlling version of the agreement.

Dated: December 13, 2024        **MCGUIREWOODS LLP**

By:    */s/ Jackson M. Story*
       R. Eric Bilik (FL Bar No. 0987840)
       (Lead Counsel)
       ebilik@mcguirewoods.com
       Jackson M. Story (FL Bar No. 1032001)
       jstory@mcguirewoods.com
       50 N. Laura Street, Suite 3300
       Jacksonville, Florida 32202
       Telephone: (904) 798-3200
       Facsimile: (904) 798-3207

       *Attorneys and Trial Counsel for Defendant Fidelity*
       *Information Services, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 13, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

By:    */s/Jackson M. Story*